

**ORDERED in the Southern District of Florida on May 21, 2008.**

**Laurel M. Isicoff, Judge**
**United States Bankruptcy Court**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE:                                           CASE NO.  05-31673-BKC-LMI

ASHLEY COPELAND DAVID,
                                                 Chapter 7
        Debtor.

_____/

H. E. RAYFIELD, JR.,                             CASE NOS. 05-3078-BKC-LMI-A

        Plaintiff,                                        06-1246-BKC-LMI-A

vs.

ASHLEY COPELAND DAVID,

        Defendant.

_____/

## <u>MEMORANDUM OPINION IN SUPPORT OF FINAL JUDGMENTS</u>

This matter came before me for trial on February 19, 2008. After considering all

the evidence presented, including designated portions of a state court trial transcript

and a lengthy presentation of video deposition excerpts, I make the following findings of

fact and conclusions of law pursuant to Fed. R. Civ. P. 52 and Fed. R. Bankr. P. 7052.

In these consolidated adversary proceedings, the Creditor, H.E. Rayfield, Jr. ("Plaintiff" or "Rayfield") seeks to have a general unsecured debt owed to him by the Debtor, Ashley Copeland David ("Debtor" or "David"), declared non-dischargeable pursuant to 11 U.S.C. §523(a)(2)(A).  In addition, Rayfield asks me to deny David's discharge generally, under the authority of 11 U.S.C. §§727(a)(2), (a)(4) and (a)(5).  For the reasons set forth below, Rayfield's objections to discharge and dischargeability are denied.

## JURISDICTION

The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(b).  This is a core proceeding pursuant to 11 U.S.C. §157(b).

## PROCEDURAL HISTORY

The Debtor filed a chapter 7 petition for relief on April 13, 2005. Robert Furr was appointed as chapter 7 Trustee. On May 3, 2005, Rayfield filed his one count Complaint (Case No. 05-3078) objecting to the dischargeability of David's debt owed to him, claiming that said debt was "incurred through the Debtor's deception amounting to false pretenses or false representation," and was therefore subject to the non-discharge provisions of 11 U.S.C. §523(a)(2)(A). Later, on March 1, 2006, Rayfield filed a second Complaint (Case No. 06-1246) seeking denial of David's discharge altogether, asserting that David made a "false oath" in violation of 11 U.S.C. §727(a)(4)(A) relative to her bankruptcy petition disclosures regarding a Wachovia bank account; the non-disclosure of a watch and ring; the non-disclosure of a laptop computer; the undervaluation of her clothing; and her expenditure of $1,203, post-petition, for the purchase of linens. Count II of this Complaint sought relief pursuant to 11 U.S.C. §727(a)(5), claiming that David

had failed to satisfactorily explain her loss of assets, namely the watch and ring referenced above, along with a challenge to David's explanation regarding how her current vehicle was being paid for, which is discussed more fully below. Finally, Count III of the Complaint asserted that David fraudulently transferred or concealed property within the meaning of 11 U.S.C. §727(a)(2)(A), namely the watch and ring referenced above, a $35,000 payment to a Mr. Lee Ardrey, assets that "helped" David's daughter assist David in paying for her current vehicle, her wedding ring, her furs, and the $1,203 used to purchase linens referenced above. David has denied all material allegations of these Complaints.

These issues were tried before the me on February 19, 2008.

## <u>FACTUAL BACKGROUND</u>

Prior to her filing for bankruptcy protection, David worked as an interior decorator, through the fictitious name "Ashley Copeland and Associates." Rayfield hired David to decorate his Palm Beach, Florida residence in May 2002. The parties entered into a written contract [Letter of Agreement, Plaintiff Ex. 4] (the "Dunbar Agreement"), pursuant to which Rayfield agreed to pay David a flat fee of $75,000, to be paid in three $25,000 installments. The Dunbar Agreement provided that the Debtor's services would include

> [P]urchasing of select new furnishings, carpeting, window treatments, wallcoverings, etc. all at prices quoted in advance, and at most economical price to client. To advise with respect to purchase of all art, antiques and accessories. … Suggested purchases will be submitted at the net price in the form of written proposals. Net price will reflect any and all rebates such as volume, advertising, cash, etc., and will represent the absolute lowest cost of the item after any and all price considerations are afforded to Ashley Copeland and Associates or any of its designees.

Shortly after the Dunbar Agreement was signed, David began working with the Rayfields on their home, which work continued until the parties had a falling out in late 2002. This falling out culminated in Rayfield filing a lawsuit in Palm Beach County Circuit Court against David on December 18, 2002 (the "State Court Litigation"). Rayfield's First Amended Complaint in that action alleged that David had fraudulently induced Rayfield into entering into the Dunbar Agreement by holding herself out to be a licensed interior *designer* as opposed to an interior *decorator*, which profession does not require a license. The Amended Complaint also alleged that David violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") as set forth in Fla. Stat. §§501.201, *et seq.*, in a variety of ways, including misrepresenting her status as an interior designer, overcharging Rayfield for the design and installation of the front door to the residence in violation of the "absolute lowest cost" provision of the Dunbar Agreement, negotiating for rebates from vendors without notifying Rayfield, and accepting rebates in violation of the contract between the parties, among other allegations. David responded by denying the material allegations of this Amended Complaint and asserting a counterclaim against Rayfield for breaching the Dunbar Agreement by failing to pay her in full for her services rendered under that Agreement.

The case was tried before a jury during the first two weeks of November 2004 (the "State Court Trial").  At the conclusion of the State Court Trial, the jury returned a mixed verdict, rejecting Rayfield's fraud in the inducement claim, but concluding that David did violate FDUTPA, and awarding Rayfield $39,000 in damages on this claim. The jury verdict does not identify which of David's actions constituted a FDUTPA violation. Moreover, the damage award of $39,000 is not related to any particular

allegation made by Rayfield. In fact, the source of the amount, while subject to some speculation, cannot be determined based on the record presented either here, or the damages claimed by Plaintiff in the State Court Litigation. The jury ruled in David's favor on her breach of contract claim, awarding her $25,500 in damages on that claim. Thus, a net judgment in the amount of $13,500 was entered in Rayfield's favor. David satisfied this judgment shortly after its entry.[1]

However, FDUTPA provides that the prevailing party is entitled to an award of attorney's fees and costs from the non-prevailing party. Accordingly, on March 16, 2005, the state court judge awarded Rayfield $235,245.80 in fees and costs (the "Fee Award"). It is this Fee Award that is the subject of Rayfield's section 523(a)(2)(A) claim before me.

## THE DEBTOR HAS NOT FORFEITED HER RIGHT TO A DISCHARGE

Rayfield contends that, pursuant to several subsections of 11 U.S.C. § 727(a), the Debtor is not entitled to her discharge; Section 727 generally provides for debtors to receive a discharge unless one of the enumerated exceptions is shown. Objections to discharge under section 727 are to be liberally construed in favor of a debtor, and strictly construed against the objecting creditor or trustee. *Rutland v. Petersen (In re Petersen)*, 323 B.R. 512, 516 (Bankr. N.D. Fla. 2005). The objecting party bears the burden of proving all elements of the claim by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991); *First Federated Life Ins. v. Martin (In re Martin)*, 698 F.2d 883, 887 (7th Cir. 1983).

---

[1] Both Rayfield and David appealed the final judgments but those appeals have been stayed.

**11 U.S.C. §727(a)(2) – Fraudulent Transfer or Concealment of Assets**

Section 727 provides:

(a)    The court shall not grant the debtor a discharge unless –
…
(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed –

(A) property of the debtor, within one year before the date of the filing of the petition
(B) property of the estate, after the date of the filing of the petition …

In order to prevail on a claim under this section, the plaintiff must prove

(1) that a transfer occurred; (2) that the property transferred was property of the estate; (3) that the transfer occurred within one year of the Petition; and (4) that at the time of the transfer the debtor possessed a requisite intent to hinder, delay, or defraud a creditor.

*Marine Midland Bank, N.A., v. Mollon*, 160 B.R. 860, 864 (M.D. Fla. 1993) (*citing In re Ingersoll*, 106 B.R. 287 (Bankr. M.D. Fla. 1989)). Intent to hinder, delay, or defraud a creditor may be based on circumstantial evidence or may be imputed where the debtor fails to make a full disclosure of her liabilities in the petition and omits assets of substantial value from the schedules. *Marine Midland Bank, N.A., v. Mollon*, 160 B.R. at 864. *See also Friedman v. Sofro (In re Sofro)*, 110 B.R. 989, 991 (Bankr. S.D. Fla. 1990); *Friedman v. Kaiser (In re Kaiser)*, 94 B.R. 779, 780 (Bankr. S.D. Fla. 1988). Denial of a discharge under this section requires proof of actual fraudulent intent on the part of the debtor. *Batcha v. Forness (In re Forness)*, 334 B.R. 724, 731 (Bankr. M.D. Fla. 2005). Courts generally consider "badges of fraud" when deciding whether a debtor had the requisite intent to hinder, delay, or defraud creditors under section 727(a)(2). *Dzikowski v. Gauthier (In re Gauthier)*, 2007 WL 1580100, at *3 (Bankr. S.D. Fla. May

30, 2007); *Dzikowski v. Chauncey (In re Chauncey),* 308 B.R. 97, 105 (Bankr. S.D. Fla. 2004), *aff'd sub nom Chauncey v. Dzikowski (In re Chauncey)*, Case No. 04-80360-CIV, 2005 U.S. Dist. Lexis 9764 (S.D. Fla. March 31, 2005), *aff'd in part, rev'd in part*, 454 F.3d 1292 (11th Cir. 2006). Even a single badge of fraud may justify a finding of actual fraudulent intent while several badges of fraud may constitute conclusive evidence of fraud. *See Ingersoll v. Kriseman (In re Ingersoll),* 124 B.R. 116, 122 (M.D. Fla. 1991).

Plaintiff argues that the Debtor is not entitled to a discharge because she fraudulently transferred assets in anticipation of bankruptcy with the intent to hinder, delay or defraud creditors, in violation of section 727(a)(2)(A). These assets include the $35,000 payment to Lee Ardrey, a transfer of "other assets" used in connection with the purchase of a Mercedes-Benz car, a Cartier watch, a diamond ring, belatedly disclosed furs, the Debtor's wedding ring, and funds used for the post-petition purchase of linens. However, Plaintiff has failed to produce any evidence that these so-called badges of fraud exist, let alone meet his initial burden of proof.

The first transfer at issue is the $35,000 payment to Lee Ardrey. The Debtor admits she made such a payment in September 2004, which was within one year of her bankruptcy petition filed on April 13, 2005. [Trial Trans., 53:14-24 (Feb. 19, 2008) ("Trans."); Deposition of Ashley Copeland David Vol. II, Plaintiff Ex. 38, 73:6-74:4 (July 27, 2005)]. Rayfield contends that the Debtor made the Ardrey payment to defraud creditors.

The only evidence presented regarding the Ardrey payment was the Debtor's own testimony. David testified that in March 2004, she borrowed $30,000 from Mr. Ardrey, who is the nephew of the Debtor's current husband, to pay the mortgage on an

investment property while she finished renovating and selling it. [Trans. 54:18-55:4].

The loan, which was not memorialized in writing, was repaid in full, along with an

additional $5,000 as interest and a "thank you," in September 2004 when the Debtor

sold the property. [Trans. 54:18-55:4, 60:21-22]. The Debtor testified she was not

required to pay Mr. Ardrey the additional money but felt it was appropriate under the

circumstances to do so. [Trans. 60:19-22]. The payment to Mr. Ardrey was not

disclosed in the Debtor's petition, nor any subsequent amended schedules, but was

disclosed by the Debtor at one of her many depositions.

Plaintiff argues that the circumstances surrounding the payment to Mr. Ardrey

provide sufficient circumstantial evidence to show the Debtor's fraudulent intent. Plaintiff

contends that Mr. Ardrey's relationship to the Debtor's husband, the Debtor's financial

circumstances before and after the transfer, the lack of documentation regarding the

loan, and the Debtor's "vague and indefinite" explanations are sufficient to find

fraudulent intent. However, this is based solely on Rayfield's "feeling and belief," not on

any objective evidence that the Debtor's testimony regarding the Ardrey payment was

false. [H.E. Rayfield, Jr., Rule 2004 exam, Debtor Ex. O, 31:25-33:14 (May 31, 2006)].

Plaintiff's "feelings" do not meet any standard of proof, let alone the preponderance of

the evidence standard Plaintiff is required to satisfy before the burden shifts to the

Debtor. Moreover, contrary to Plaintiff's argument, the Debtor's explanation of the loan

and its repayment was not "vague and indefinite," but was clear both in her trial

testimony and in her prior depositions. Neither Mr. Ardrey's relation to the Debtor's

husband or the fact that the loan was not documented in writing is indicative of

fraudulent intent in the absence of some other, objective, fact indicating the Debtor was untruthful about the transaction.

The second transfer at issue is an alleged transfer of assets related to the purchase of a Mercedes-Benz automobile. The Debtor testified that when she filed bankruptcy she was leasing a Mercedes, which lease ended in 2006. [David Direct Testimony, Debtor Ex. P, ¶ 16]. The Debtor required a car for her position as a real estate agent but was unable to purchase one using her own credit; therefore, her daughter and son-in-law offered to help by purchasing and financing a new Mercedes under their names, for which car David was to be responsible for the payments. [David, Ex. P, ¶ 16]. The Debtor states she has made all payments on the car and paid for all insurance by providing her daughter and son-in-law money in $5,000 allotments from which they can draw funds as the payments are due. [Trans. 71:22-72:18].

Plaintiff contends that the Debtor must have transferred assets to her daughter pre-petition that were used to purchase the Mercedes post-petition. Plaintiff has not alleged what assets Plaintiff believes to have been transferred or when they were purportedly transferred to the Debtor's daughter. Indeed Plaintiff did not provide any evidence that the Debtor transferred any assets or did anything inappropriate with respect to the purchase of the Mercedes. Plaintiff, in fact, acknowledged at his 2004 examination that he has "no financial information" relating to the car or the assets purported to be fraudulently transferred, but states the basis of the complaint is that the situation "just doesn't make sense." [Rayfield 2004 exam, Ex. O, 28:3, 27:12-13]. Moreover, Plaintiff concedes he believes the Debtor has sufficient post-petition income to afford the payment for such vehicle. [Rayfield 2004 exam, Ex. O, 27:16-23]. Plaintiff

has not presented any evidence to show that any improper transfer occurred relating to the purchase of the Mercedes, and no evidence demonstrating that the Debtor possessed an intent to hinder, delay or defraud creditors. Indeed, these assertions are baseless. Plaintiff has failed to meet his burden of proof regarding these allegations.

Plaintiff next alleges the Debtor fraudulently transferred or concealed a Cartier watch and a diamond ring with the intent to hinder, delay or defraud creditors. The Debtor testified that the Cartier watch was either lost or stolen in a move in 2004 [Trans., 45:14-18], and Plaintiff has presented no evidence to suggest anything to the contrary. As to the diamond ring, Plaintiff elicited no testimony at the trial, but introduced as evidence transcripts of the Debtor's deposition testimony in which she states the diamond ring was taken by her ex-fiancé during a breakup some ten years prior. [Trans. of Debtor's section 341 meeting, Plaintiff Ex. 47, 11:13-20 (May 16, 2005); David Depo. v. II, Ex. 38, 25:24-27:24]. Plaintiff could provide no explanation why he felt that these assets were not lost or taken as the Debtor testified, except for his general suspicion regarding the Debtor's explanation. [Rayfield 2004 exam, Ex. O, 8:18-9:24; 12:5-13:2]. Plaintiff has not shown any evidence that the Debtor transferred or concealed either of these assets with or without the intent to hinder, delay, or defraud creditors. Again, based on the Debtor's failure to present any evidence to contradict these assertions, Plaintiff's allegations are groundless and he has not met his burden.

Plaintiff alleges the Debtor fraudulently concealed assets by failing to list her wedding ring and three furs on her original schedules. However, the Debtor did disclose the existence of these assets at the section 341 meeting of creditors conducted just a few weeks after her petition was filed; the Debtor's schedules were later amended to

include both assets. [341 Meeting, Ex. 47, 4:3-8; *see also* First Amended Schedules

(Bankr. CP #57)]. The wedding ring and furs were subsequently turned over to the

chapter 7 bankruptcy Trustee, who sold them for $200 and $1,300 respectively.

[Trustee's Final Report (Bankr. CP #125)]. Plaintiff presented no evidence at trial

regarding the furs other than the Debtor's prior deposition testimony and the transcript

from her 341 meeting, at which meeting the Debtor volunteered the information to the

Trustee without prompting;[2] such evidence does not demonstrate concealment of those

assets or a fraudulent intent by the Debtor. I find the Debtor's disclosure and turnover of

the furs comports with her explanation that they were inadvertently left off the original

schedules. Indeed, an exchange between the Debtor's bankruptcy counsel and the

Trustee at the Debtor's second Rule 2004 exam indicates that there were several

necessary amendments to be made to the bankruptcy schedules but the Debtor's

counsel intended to make all the amendments at one time. [David Depo., v. II, Ex. 38,

18:8-15]. As to the wedding ring, the Debtor testified that while assisting her with the

initial petition, the Debtor's attorney's assistant advised David she did not have to

schedule her wedding ring. Rayfield presented no evidence to contradict that testimony.

I also find this explanation to be credible and reasonable in light of the fact that the

Debtor did disclose the ring and turned it over to the Trustee for sale.

Lastly, Plaintiff contends that the Debtor's discharge should be denied due to a

post-petition purchase of linens for $1,203, with cash Plaintiff contends the Debtor

fraudulently concealed and failed to disclose on her bankruptcy schedules. The Debtor

---

[2] The Debtor's testimony from her 341 meeting:
      Trustee: Is the petition, schedule and statement of financial affairs true and correct?
      Debtor: Yes it is. There is one thing I remember. I have some fur coats in storage which I
          probably wore one time in four years. I remembered that.
[341 Meeting, Ex. 47, 4:3-8].

admits making the linen purchase and testified she paid for the linens using money her husband gave her as a gift post-petition. Plaintiff belabors the point that the Debtor is uncertain now what the gift was for; the Debtor testified it could have been a late Valentine's Day gift, a birthday gift, or a gift because she was upset about having to turn over all of her possessions to the Trustee. [Trans., 76:3-80:5]. Whatever the reason for the gift, the evidence is uncontroverted that the money was a gift given to the Debtor post-petition.  Thus, Plaintiff did not meet his initial burden, but even if he had, I find the Debtor provided a reasonable explanation.

Plaintiff has failed to meet his burden to show that the Debtor is not entitled to a discharge under section 727(a)(2). Indeed, as noted, in most circumstances the relief requested is completely unfounded. Therefore, Plaintiff is not entitled to relief under this section.

### 11 U.S. § 727(a)(4)(A) – False Oath

Plaintiff objects to the Debtor's discharge under 11 U.S.C. §727(a)(4)(A) arguing that the Debtor made false oaths regarding several assets in her bankruptcy petitions. Section 727(a)(4)(A) provides that a debtor will not be entitled to a discharge if "(4) the debtor knowingly and fraudulently, in or in connection with the case – (A) made a false oath or account …."

> "To justify denial of a discharge under § 727(a)(4)(A), the false oath must be fraudulent and material." *Swicegood v. Ginn*, 924 F.2d 230, 232 (11th Cir. 1991). "Deliberate omissions by the debtor may also result in the denial of a discharge." *Chalik*, 748 F.2d at 618. False oaths regarding worthless assets can still bar discharge of debts. *Id*. Discharge may not be denied where the untruth was the result of mistake or inadvertence. *In re Cutignola*, 87 B.R. 702, 706 (Bankr. M.D. Fla. 1988). "Rather, the false oath must be made intentionally with regard to a matter material to the case." *Id*.

*Keefe v. Rudolph (In re Rudolph)*, 233 Fed. Appx. 885, 889 (11th Cir. Feb. 23, 2007).

Here, Plaintiff's complaint alleges that the Debtor failed to disclose on her schedules the

correct amount of money in her Wachovia account, and that she also failed to disclose

the lost diamond ring, the Cartier watch, a laptop, and the cash used for the post-

petition purchase of linens. Rayfield also contends the Debtor undervalued her clothes

in her bankruptcy schedules.

I have already addressed Plaintiff's allegations regarding the diamond ring, the

Cartier watch, and the cash used for the post-petition purchase of linens. It is not

necessary to address these issues again.

Plaintiff contends that the Debtor made a false oath regarding the balance in her

account with Wachovia Bank. In her original schedules, the Debtor disclosed the

account, provided the account number, and scheduled its value as $8,001.63.

[Schedule B (Bankr. CP #1)]. In actuality, the balance of the account was $12,001.63.[3]

[Trustee's Final Report (Bankr. CP #125)]. Plaintiff has not presented evidence that the

Debtor possessed any fraudulent intent when she listed the lower amount. The Debtor

testified she originally misstated the balance in the account because she was not able

to obtain the account balance as it was the subject of a garnishment by Plaintiff. There

is no allegation that the Debtor removed any funds from the account; indeed, she would

have been unable to do so in light of the garnishment action. The fact that the Debtor

provided an incorrect account balance is immaterial because the account itself was

disclosed and the Trustee recovered all funds held in the account.

Plaintiff also contends that the Debtor's failure to schedule a laptop and the

undervaluation of her clothes constitutes a false oath. The Debtor's laptop was not

---

[3] I note that the Debtor misstated the account balance by $4,000, not $5,000 as Plaintiff alleges.

scheduled, but was disclosed to the Trustee at her second 2004 exam.[4] [David Depo., v. II., Ex. 38, 40:11-22]. The Debtor stated her failure to schedule the laptop was an oversight, that she had forgotten about it as it had been in storage. In light of the fact that the laptop was disclosed, the Debtor's failure to schedule the laptop is immaterial. Likewise, the Debtor's scheduled valuation of her clothes is neither fraudulent nor material. The Debtor originally scheduled the value of her clothes as $0. [Schedule B (Bankr. CP #1)]. The Debtor later amended her bankruptcy schedules, listing the value of the clothes as $4,000. [First Amended Schedules (Bankr. CP #27)]. The Debtor testified her attorney sent someone to her home to value the clothes. The Debtor turned over all her clothes to the Trustee, including her "intimates." [Trans., 111: 5]. The Trustee ultimately sold the Debtor's clothes for $9,230.27. [Trustee's Final Report (Bankr. CP #125)]. Notwithstanding the evidence that she spent exponentially more to purchase the clothes new, the Debtor's amended valuation of $4,000 for the used clothes is not a material or fraudulent misrepresentation.

Although Rayfield showed some inaccuracies on David's original schedules, Rayfield has provided no evidence that the Debtor intended to defraud her creditors by knowingly making false statements. Plaintiff has failed to meet his burden under section 727(a)(4)(A).

### 11 U.S.C. §727(a)(5) – Failure to explain loss or deficiency of assets

Plaintiff argues that the Debtor's discharge should be denied under 11 U.S.C. §727(a)(5) for failure to explain missing assets, including the diamond ring, Cartier

---

[4] It is not clear whether the laptop was ultimately turned over to the Trustee.  Although not raised by either party, it is evident from the Debtor's 2004 examinations [David Depo., v. II and III, Ex. 38], that the Debtor was diagnosed with cancer around the same time she filed bankruptcy, and spent several months in New York receiving treatment and recuperating. Thus, even if the laptop was not turned over to the Trustee, I do not find this to be material or probative of any issue raised at the trial.

watch, and the assets used to obtain the Mercedes. A denial of a discharge under this section requires only that the debtor fail to provide an adequate explanation as to the loss of assets. The party objecting to discharge bears the initial burden of establishing the basis of the objection.

> [T]he burden then shifts to the debtor to "explain satisfactorily the loss." [*In re Chalik*, 748 F.2d at 619]. "To be satisfactory, 'an explanation' must convince the judge." *Id.* (citing *In re Shapiro & Ornish*, 37 F.2d 403, 406 (N.D. Tex. 1929), aff'd, 37 F.2d 407 (5th Cir. 1930)). "Vague and indefinite explanations of losses that are based on estimates uncorroborated by documentation are unsatisfactory." *Chalik*, 748 F.2d at 619 (citations omitted).

*Hawley v. Cement Industries, Inc. (In re Hawley)*, 51 F.3d 246, 249 (11th Cir. 1995).

As I have already discussed, Rayfield's allegations regarding the ring, the watch and the mysterious, unidentified transferred assets for the Mercedes, are baseless and completely lacking in any evidentiary support. Moreover, as previously noted, I find the Debtor's explanations satisfactory regarding each of these allegations.

Objections to discharge under 11 U.S.C. §727 are to be liberally construed in favor of debtors and strictly construed against creditors in order to grant debtors a fresh start. *In re Petersen*, 323 B.R. at 516. Because Plaintiff has failed to demonstrate by a preponderance of the evidence, indeed, by any evidence, that the Debtor is not entitled to her discharge under 11 U.S.C. §727, judgment will be entered in favor of the Plaintiff in Case No. 06-1246. Counsel for the Debtor is directed to prepare a final judgment consistent with this memorandum opinion.

## THE FEE AWARD IS DISCHARGABLE

Because I have entered judgment in favor of the Debtor in Case No. 06-1246, I must determine whether Plaintiff is entitled to judgment in his favor in Case No. 05-

3078. That is, I must determine whether the Fee Award is non-dischargeable by virtue of 11 U.S.C. §523(a)(2)(A).

Section 523(a)(2)(A) provides that a bankruptcy discharge under section 727

Does not discharge an individual debtor from any debt –

(2) for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained, by, -

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition, …

In order for a creditor to demonstrate that a claim is non-dischargeable under 11 U.S.C. §523(a)(2)(A), a plaintiff must demonstrate by a preponderance of the evidence that "(1) the debtor made a false representation to deceive the creditor, (2) the creditor relied on the misrepresentation, (3) the reliance was justified, and (4) the creditor sustained a loss as a result of the misrepresentation." *In re Bilzerian,* 153 F.3d 1278, 291 (11th Cir. 1998).

The Fee Award derives from the jury's finding that the Debtor "[committed] an unfair or deceptive act or practice against the Plaintiff which was the legal cause of loss, injury or damage to Plaintiff" (the "FDUPTA Finding"). Pursuant to Fla. Stat. §515.2015 the prevailing party in an action on a FDUPTA violation is entitled to an award of attorney fees.

In order to prevail in an action under FDUPTA the plaintiff must prove each of the following elements – "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. 2d DCA 2006). Actual damages are measured by determining "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the

condition in which it should have been delivered according to the contract of the parties." *Id.*

A deceptive or unfair act or practice has been defined as one that "offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Urling v. Helms Exterminators, Inc.*, 468 So.2d 451, 453 (Fla. 1st DCA 1985) (citations omitted). However, it is not necessary to find fraud in order to find that a FDUPTA violation has occurred. *Id*; *Rollins, Inc. v. Butland*, 951 So.2d 860.

Because the Fee Award derives from the FDUPTA jury award, to the extent I find all or a portion of the FDUPTA award would have been non-dischargeable had it not been paid, then the Fee Award is non-dischargeable. *K & K Ins. Group, Inc. v. Houston (In re Houston)*, 305 B.R. 111, 116 (Bankr. M.D. Fla. 2003) (*citing USAA Cas. Ins. Co. v. Auffant (In re Auffant)*, 268 B.R. 689, 695-696 (Bankr. M.D. Fla. 2001)). *See also St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 678-679 (11th Cir. 1993) ("[I]f a creditor is able to establish the requisite elements of Section 523, the creditor is entitled to collect the 'whole of any debt' he is owed by the debtor … a judgment requiring payment of punitive and compensatory damages for a common cause of fraudulent conduct is a 'debt' as defined by the Bankruptcy Code in § 523(a).")

Thus, in reviewing all the evidence I must determine whether any evidence adduced at the State Court Trial supports a finding that any of the alleged acts were unfair or deceptive and caused the Plaintiff an actual loss of all or a portion of the $39,000, which act also constituted fraud, false pretenses, or a fraudulent representation upon which Rayfield justifiably relied. If there is no act by the Debtor that

satisfied all of these elements, then the underlying claim would be dischargeable and, therefore the Fee Award is dischargeable.

The jury instructions highlighted the following conduct alleged by Plaintiff as possible unfair or deceptive acts:

1.    Misrepresentation by the Debtor that she was an interior designer;

2.    Submitting false or phony invoices;

3.    Overcharging Plaintiff;

4.    Failing to pay Plaintiff rebates, refunds, credits or over charges;

5.    Failing to advise Plaintiff when she was charging him more than the actual cost of goods for furnishings.

Unfortunately, as previously noted, there is no indication how the jury came to the amount of $39,000. Indeed, one can, at best, speculate as to how the jury arrived at that figure. [Trans., 166:4-24]. In the State Court Trial Rayfield sought actual damages totaling $62,971.32 as reflected in a letter from Rayfield to David dated December 6, 2002 [Plaintiff Exh. 28]. These items included the front door invoice of $12,190.00 but also included several other items including fabric, items paid for but not yet delivered, and credits allegedly not yet granted. However, nothing presented either in the State Court Trial[5] or in the trial before me illustrates how the $62,971.32 turned into $39,000.00. In testimony at the State Court Trial, David conceded she did not give Rayfield all the rebates to which he might otherwise be entitled, but claims that all the items she ordered for Rayfield were ultimately delivered or in the warehouse ready for delivery.

---

[5] Although I would not admit the closing arguments in the State Court Trial as evidence, I did review them in an attempt to resolve the genesis of the $39,000. The closing arguments were not helpful to the analysis.

Plaintiff relies on the same categories of acts or events as are listed in the jury instructions in support of his section 523(a)(2)(A) claim. The specific conduct cited by Plaintiff in support of section 523(a)(2)(A) relief[6] is

    (a)    forgery of a false and inflated invoice, relating to a door purchased from Marcello Vincenzo Studios;

    (b)    false representations about the true price of two chests that the Debtor suggested Plaintiff purchase from Bruce Ehrhard; and

    (c)    the Debtor's receipt of $8,000 in "rebates" or commissions from items Mr. Rayfield purchased from a store called Style de Vie.

[Plaintiff Opening Statement, pp. 1-2, 3; Plaintiff Closing Argument, pp. 1-6].

I will address each of these acts in turn. The Debtor admitted she directed her employee to prepare a forged invoice and has appropriately acknowledged that this was improper. [Trans., 94:22-24; 96:11-17; 103:6-22]. There can be no dispute that this forged invoice was fraudulent and a false misrepresentation made by the Debtor for the purpose of deceiving the Plaintiff.[7]  I find that this act also constitutes a deceptive act for

---

[6] A component of the Plaintiff's FDUPTA claim in the State Court Litigation related to Plaintiff's allegations that he was fraudulently induced to enter into the Dunbar Agreement based on the Debtor's alleged misrepresentation that she was an interior designer rather than an interior decorator. The jury specifically found the Debtor did not fraudulently misrepresent her status as an interior designer [Jury Verdict Form, Debtor Ex. I], which finding was confirmed by the state court in its Order Denying Plaintiff's Motion for Judgment on the Counterclaim [Debtor Ex. K]. Notwithstanding, at Plaintiff's request, and as part of Plaintiff's exhibits, I sat through several hours of deposition testimony, devoted almost entirely to this now irrelevant issue. However, were I to have ruled on this issue I would have ruled consistent with the jury's finding.

[7] The Debtor argues that because the forged invoice constitutes a breach of contract, by virtue of the economic loss rule this act could not give rise to a fraud claim and therefore cannot be the subject of a section 523(a)(2)(A) claim for fraud. [Debtor's Closing Argument; Trans., 168:11-170:9]. While there may be circumstances where this argument would prevail, the instant case is not one of them. As noted above, a breach of contract can nonetheless constitute a FDUPTA claim, and a FDUPTA claim may include fraudulent acts. *See Samuels v. King Motor Co. of Ft. Lauderdale*, 782 So. 2d 489 (Fla. 4th DCA 2001); *Sarkis v. Pafford Oil Co.*, 697 So. 2d 524 (Fla. 1st DCA 1997).

purposes of Fla. Stat. §515.203.[8] However, in order for this act to have constituted a FDUPTA violation, or give rise to a non-dischargeable debt, Plaintiff must demonstrate that he suffered actual damages. Since Plaintiff did not prove actual damages from this deception at trial, it could not have constituted a FDUPTA violation and therefore cannot be one of the acts the commission of which gave rise to the Fee Award.

There is no dispute that the Plaintiff paid the forged invoice [State Court Trans. 52:7-9; 106:3-4] and refused to accept, or did not receive, the refund check that was offered [State Court Trans., 107:6-15, 181:4-5, 426:9-17; 997:5-10]. However, the Debtor testified at the State Court Trial that because Plaintiff would not agree to take a refund check, the Debtor gave him credit on an invoice. [State Court Trans., 577:6-8, 584:3-9]. Plaintiff never denied this. Indeed when questioned by Debtor's trial lawyer about this, the Plaintiff avoided answering:

> Q.    Well, you were then, after not taking a check in early November, were given a credit for the door, weren't you?
>
> A.    I don't understand, Mr. Madden, what you [sic] talking about me not taking a check.  When was a check even given to me that I didn't take?

[State Court Trans., 1004:25-1005:4].

Thus, although the Debtor's forgery was inexcusable, because it did not cause Plaintiff to incur actual damages, the forgery could not have been one of the acts the jury found was a FDUPTA violation, and therefore cannot form a basis for finding the Fee Award is non-dischargeable.

---

[8] At the State Court Trial the Debtor acknowledged the forged invoice was an unfair and deceptive trade practice [State Court Trans., 615:9-13] but the Debtor's concession of what is a legal conclusion, while perhaps of some persuasion to a jury, is not relevant to my independent obligation to make such a determination.

The next act Plaintiff argues renders the Fee Award non-dischargeable is the inflated invoice for the two chests being sold by Bruce Ehrhard. The Debtor does not dispute presenting an inflated invoice [Trans., 99:19-22; State Court Trans., 716:15-16, 732:14-15], which inflated invoice I find constitutes a false representation or false pretense made to deceive Plaintiff, and, therefore, a deceptive act.[9] However, in this instance there is no dispute that Plaintiff did not suffer any, let alone "actual," damages for this deception. Plaintiff never bought the chests through the Debtor. Rayfield bought the chests directly from Ehrhard at Ehrhard's price, not the apparently inflated price sought by the Debtor. [Trans., 150:15-23; State Court Trans., 576:6-10]. Since Plaintiff clearly did not suffer damages from this act, this act could not have formed a basis for the jury's finding of a FDUPTA violation, and thus, cannot form a basis for finding the Fee Award non-dischargeable.

The final act upon which Plaintiff relies in having the Fee Award declared non-dischargeable is the Debtor's acceptance of rebates or commissions from Style de Vie allegedly on account of items Plaintiff purchased from Style de Vie. Plaintiff argues that the Debtor's silence regarding this material fact constitutes "a false representation action," citing *Trizna & Lepri v. Malcolm (In re Malcolm)*, 145 B.R. 259 (Bankr. N.D. Ill. 1992). [Trans., 187:12-13].

A false pretense involves "an implied misrepresentation or conduct intended to create and foster a false impression." *Leeb v. Guy (In re Guy)*, 101 B.R. 961, 978 (Bankr. N.D. Ind. 1988); *Minority Equity Capital Corp. v. Weinstein (In re Weinstein)*, 31 B.R. 804, 809 (Bankr. E.D.N.Y. 1983). "[W]hen the circumstances imply a particular set

---

[9] At the State Court Trial the Debtor also acknowledged the invoice for the chests was deceptive [State Court Trans., 717:3-10], however, as I previously noted, this concession by the Debtor is not the equivalent of a legal conclusion.

of facts, and one party knows the facts to be otherwise, that party may have a duty to correct what would otherwise be a false impression. This is the basis of the 'false pretenses' provision of Section 523(a)(2)(A)." *In re Malcolm*, 145 B.R. at 263 (citing *In re Dunston*, 117 B.R. 632, 639-41 (Bankr. D. Colo. 1990)).

However, absent a duty imposed by law to disclose facts because of a special relationship of the parties or a showing that a debtor has willfully concealed or omitted material facts requested by a creditor, "[a] mere silence and failure to disclose material facts falls short of the requirement of the law to establish false representations." *The Hawthorne Corp. v. Grogan (In re Grogan)*, 146 B.R. 866, 870-71 (Bankr. M.D. Fla. 1992) (*citing In re Hunter*, 780 F.2d 1577, 1580 (11th Cir. 1986)).

Rayfield's direct testimony [Plaintiff Ex. 55] states that "Style de Vie, through Copeland [Debtor], then sold me various art or furnishings." Plaintiff's opening statement also states the same. However, the Debtor repeatedly testified, both at the State Court Trial (in the videotaped deposition) and at the trial before me that the Plaintiff purchased all the items directly from Style De Vie, albeit with advice from the Debtor. [Trans., 104:23-105:9, 107:13-17, 118:21-119:4].[10]

According to the Dunbar Agreement, the "net price" provision only applies to items purchased through the Debtor. Otherwise the language "net price in the form of written proposals" would make no sense. According to the Debtor and Plaintiff, Plaintiff and his wife purchased many things on their own, sometimes with the Debtor's advice,

---

[10] Jay Halperyn, the owner of Style De Vie testified at the State Court Trial. He never claimed that David brought the items from him for the Rayfields. His testimony regarding the "commission" was very unspecific. Moreover, Halperyn admitted that when he testified he owed Rayfield $83,000 and that at the time of trial he was sharing his profits with Rayfield, paying Rayfield a percentage of the Style de Vie sales. [State Court Trans., 949:5-14]. Indeed the Debtor disputes that the $8,000 she received from Halperyn was for the Rayfield purchases; rather, the Debtor testified she believed the $8,000 was for money Halperyn owed her for reimbursement for overhead. [Rayfield v. David Trial Video, Plaintiff Ex. 45].

and sometimes not. [State Court Trans., 120:14-121:10]. Plaintiff has not suggested that the Debtor is responsible for the price of any other direct purchases Rayfield made. Indeed, even the description of services in the Dunbar Agreement provides that "the most economical price to client" only applies to those items purchased by the Debtor, not those items for which the Debtor "advise[s] with respect to purchase."

Accordingly, even if the Dunbar Agreement created in the Debtor some duty to disclose rebates or commissions when the Debtor was purchasing items for the Rayfields, that duty was not triggered by Plaintiff's direct purchase of any items, including items from Style de Vie. Thus, even if the jury found the Debtor's failure to disclose the arrangement with Style de Vie constituted an unfair or deceptive trade practice, and even if the jury found Plaintiff suffered actual damages as a result,[11] the Debtor's failure to disclose her arrangement with Style de Vie did not constitute false representations, false pretenses, or fraud and therefore any damages stemming from this act are dischargeable under section 523(a)(2)(A).

Plaintiff, having failed to demonstrate that any of the conduct which he alleges was fraudulent gave rise to a FDUPTA claim, is not entitled to a finding the Fee Award is non-dischargeable pursuant to 11 U.S.C. §523(a)(2)(A). Counsel for the Debtor is directed to prepare a final judgment in Case No. 05-3078 consistent with this opinion.

## **CONCLUSION**

The Debtor and Rayfield have had a contentious relationship from the beginning. While Rayfield may have taken advantage of the Debtor, and, indeed, the evidentiary record indicates Rayfield did take advantage of the Debtor, his behavior does not

---

[11] It is not clear what those damages could be since Rayfield negotiated, presumably, with Style de Vie, to get what Rayfield believed was a fair price.

excuse the Debtor's behavior, which was deceptive, inappropriate and inexcusable with respect to much of the conduct about which the Plaintiff complains. However, inappropriate, inexcusable, and sometimes even, deceptive, do not equate to non-dischargeable.

"[A] central purpose of the Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors and enjoy a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Grogan v. Garner*, 498 U.S. at 226 (internal citation and quotation marks omitted). Consequently, the Bankruptcy Code proscribes limited circumstances under which a debtor forfeits the privilege of discharge, whether in whole or in part. Plaintiff having failed to satisfy his burden that the Debtor has forfeited that privilege, final judgment will be entered in favor of the Debtor in both cases.

###

Copies furnished to:
James K. Green, Esq.
James S. Telepman, Esq.